Good morning and may it please the court, Jim Mulally on behalf of the appellants and defendants, Sheriff Turlidge and Deputy Reddoch. Presented for your review are three issues on appeal, namely whether the district court erred in denying the appellant's motion for judgment as a matter of law under Rule 50, whether the verdict in this case reached by the jury is inconsistent, and whether punitive damages was also an inconsistent verdict, and whether there was an abuse of discretion in the award of punitive damages. Beginning first and foremost with whether the court erred as a matter of law in denying the appellant's Rule 50 motions, the appellants submit that there is no legally sufficient evidentiary basis by which any reasonable jury could have found for the plaintiff at the close of the plaintiff's case. The issues in this case were simple and arises out of a single incident whereby Deputy Reddoch was attempting to investigate numerous complaints about young children at a school fair that . . . Did you represent your client in the district court? Yes, Your Honor. Okay. Yes. I was part of the trial team, Your Honor, yes I was. And so, the issues presented were simple, whether or not reasonable suspicion existed for the initial detention of the plaintiff, and whether subsequently to the initial detention probable cause existed for plaintiff's subsequent arrest. Plaintiff presented two witnesses, himself and the school principal who was working that day. Plaintiff acknowledged in his testimony that he was taking photographs of children without their consent, that it was causing them distress, that he noticed that it was causing them distress. He acknowledged that he was there alone, unaccompanied by any of his children of his own or anyone else, and he acknowledged that Deputy Reddoch approached him and asked him for his identification after several children complained to Deputy Reddoch about his actions. He also presented the testimony of . . . Is it your position that Holmes was arrested or detained when your client asked him for  It is my position that he was in the process of conducting an investigatory stop under Terry and Louisiana Revised Statute, Louisiana Code of Criminal Procedure 215.1, which codifies Terry. It was the testimony of Deputy Reddoch that his initial approach of plaintiff was to just find out what was going on. Right, but you can't require a person to present ID when you're just trying to find out what's going on. You have to be arrested or detained under Louisiana law. Yes, Your Honor. Investigating is not a reason enough to . . . you haven't violated Louisiana's law when you haven't produced your ID just pursuant to an investigation. You have to be arrested or detained in order to be resisting arrest for not giving your ID. Yes, Your Honor. So there has to be a valid reason for him to have been arrested or detained prior to that. So if you want to say he was being detained, then I'll accept that, Your Honor. He was being investigated for allegations that he was causing young children in a school fair distress by taking their photographs without their permission. After numerous children approached Deputy Reddoch and complained of it, he identified plaintiff and at that point, yes, he was going to investigate his actions. And it is our position, and I think it was the only logical position, that he had sufficient reasonable belief that a crime may have been, was about to be committed, or had been committed. All right, so as far as the stop goes, I thought the jury said, well, the officer violated the Fourth Amendment by not having ground to stop, but he's entitled to qualified immunity. That's correct, Your Honor. In other words, they sort of, I guess whatever the jury did as far as the prong one and prong two, but that claim was rejected. Holmes lost on that. So I mean, why does that matter? I mean, you won on that claim. Well, so I think we should have won at halftime on that claim. And I think that the evidence presented clearly entitled us to relief under Rule 50. I think, and I disagree with the jury's finding that, I guess as you put it, on the first prong that he, the initial intention was unreasonable, however, not unreasonable according to clearly established law. But it's also relevant. I thought there was, I thought even Officer Reddick testified that, well, maybe I didn't have real reasonable ground to stop him, or to investigate, so to speak. Yes, Your Honor. In other words, I thought there was testimony that cut both ways. Admittedly, Your Honor, Sergeant Reddick's testimony was not, it wasn't the best testimony. But it's the testimony that the jury was allowed to weigh, and if the evidence is sufficient, we have huge deference to that jury verdict. Well, with all due respect to Sergeant Reddick, what he thought about whether or not he had reasonable suspicion of probable cause really isn't the issue. That wasn't what the court instructed the jury. It's an objective standard, and it's based on the totality of the circumstances. Yeah, but if one of the circumstances is the officer says, well, I'm not really sure I had ground to really stop him and ask him who he was, how do they not, how can they not weigh that evidence? Well, your position is that that evidence, whatever it may be, if it's muddled, what have you, from the officer, it wasn't enough to submit to the jury as a matter of law. Well, it was muddled. I like that word. He certainly got confused during his testimony, but here . . . You say muddled. I suspect the other side's going to say, no, he said it, and that means there was a sort of a multifaceted look at what happened here, and the jury's entitled to decide who to believe, right? Well, I think what the jury was required to do was, as instructed, and applied the law to the facts objectively . . . Well, what are the facts? He said, she said. Well . . . Why isn't the jury entitled to decide which version to believe? Well, I think there's one version that's relevant, and that's that there were numerous complaints to Sergeant Reddick about plaintiff's behavior that he was trying to investigate. Well, they gave him qualified immunity, though, on that claim. What they didn't give him qualified immunity on was the arrest claim. And then that's . . . our second argument is that that, too, is inconsistent and not . . . How is it inconsistent? The jury's sorting different claims and actually weighing evidence as to each claim, and it's coming up with a mixed result. Holmes lost on several claims. He won on the state law claims, and he won on the arrest claim. Well, our position is, if, according to the instructions provided to the jury by the court, he was not objectively unreasonable in detaining the plaintiff, then he could not be objectively unreasonable in subsequently arresting him for violating the very statute that he was arrested for, which is failing to make his name known. In other words, if the detention's lawful, then Louisiana state law, as Your Honor says, requires you to produce identification or make your presence yourself known. But it just won on qualified immunity. It doesn't mean that the detention was lawful. It meant that it wasn't obvious to any reasonable officer. And they said, oh, well, he could have thought, it's not clear, the law is not clearly established or whatever, so it doesn't mean the detention was lawful, but that at that point, he should have known he couldn't have just arrested him when he didn't even think he could do it himself. They cut him a break, basically, by saying, well, he may not have really understood and he's admitting that. It seems like they cut your client a break rather than . . . I would submit to you, though, if he's entitled to the break on the first question, he was entitled to the break on the second. No, because it includes not just whether it's wrong or not. It includes whether or not a reasonable officer would have understood. So you don't know that they decided that he wasn't correct. There's no determination that they said it was reasonable as a matter of law. And I guess my point, my argument is, it should likewise have not been obvious to a law enforcement officer that arresting someone for failure to identify himself when asked to do so pursuant to a lawful detention wouldn't violate clearly established law. No, but what I'm saying is we don't know that the detention was lawful. We just know that he didn't violate qualified immunity, which means that it's clearly established that it's not. It doesn't mean that it was correct. It just means that it wasn't so wrong that every officer would know. And so those are totally consistent. It doesn't mean . . . it means that it was . . . they could . . . like if we were doing it instead of the jury, we would say, one, it was wrong, two, it wasn't clearly established at the time, therefore client wins on Fourth Amendment. But it's still wrong when you go to the arrest claim and you use that and you say a person would know that you can't arrest the person without . . . for the ID issue without something underneath that's good. And so I don't see that it's inconsistent. So that's . . . but go ahead and make your argument. So maybe one of the others think it's inconsistent. Before you leave that, am I correct that the basis of your Rule 50B motion was that Holmes did not rebut the fact and Robert Reddick had reasonable suspicion to believe Holmes was assisting arrest? So . . . and again, it's . . . the issues were separated for trial and two questions . . . Well, in your first Rule 50B motion, did you not assert breach of the peace or qualified immunity? I did, Your Honor. I submitted . . . well, under . . . on my first motion under Rule 50A, I submitted that the defendant hadn't met his burden, hadn't overcome the defense of qualified immunity, and it was re-urged after . . . Did the district court not instruct the jury on breach of the peace? He did not, Your Honor. And you didn't object to the lack of that instruction? I don't . . . I don't believe I did, Your Honor. Okay. Go ahead. So . . . so again, it was submitted as two questions, but it really was one event. And I'll spot you, Your Honor, that there's no case on point, which is essentially my point, that would show Deputy Reddick, under the totality of the circumstances, that his actions on that day in trying to investigate the complaints of these children at a private school fair violated clearly established law. Although they were presented as separate issues, the line of where reasonable suspicion stops and probable cause to arrest starts is, as the Supreme Court has said, blurry. But you agreed to this charge, to present these . . . the different claims separately, right? Yes, Your Honor. And it was charged according to the pattern on qualified immunity and everything. Yes, Your Honor. There were . . . the jury charges were agreed upon and were satisfactory. And that's our . . . Well, isn't the reason it's blurry here because of the facts? I mean, as I apprehend it, Officer Reddick said, you know, who are you? Give me your ID. And according to Holmes, he says, well, why? And the officer and Holmes tell a markedly different story about his response and what he said and what the officer did. But then, boom, immediately he finds himself, like, a hand behind his back and going to the ground. And in other words, the officer never said, what are you doing over here? Or anything else to complete the investigation, even assuming it's a reasonable stop. It's not like a Terry stop normally because it's not in a car on a highway or whatever, but it's still a stop, right? So he's got to have reasonable ground to do it. He does the investigation. The stop needs to end. But the officer never did anything other than, who are you? Give me your ID. The guy says, well, why? And then he finds himself arrested on the ground. And, I mean, that's why the line's blurry. And, again, that goes right back to what the jury ought to decide, who to believe. I mean, there's blurriness on the . . . on the . . . what the guy did. He said he didn't refuse to give his ID. We didn't have a chance.  Well, I mean, that's . . . and I understand that's a facts question.  And which we have to assume take all the facts in the light most favorable to the verdict. And, again, our position was simply that reasonable suspicion exists to find out who he was, what he was doing, and why he was doing it. Right. But he hadn't actually denied . . . his position is he didn't deny giving his ID. Well, I mean . . . Even if the reasonable . . . even if we spot you prong one on the last question too, you still have an ish fact issue on the second inquiry. Being that . . . Which is that he never refused to give his ID. He just asked why that they wanted. Well, I guess that would be . . . I don't think that's what the law required. I think if I have reason to detain you, if I'm pulled over on the way home from here today, I don't get . . . and the policeman says, license identification, I don't get to say why. You do get to say why. Now, if you subsequently don't . . . and if the law says, I don't have to tell you, but I'm still demanding your own thing, then that's an interesting question. And the guy probably should provide his ID at that point. But you don't . . . you do . . . you can ask why. Why have you pulled me over, officer? People ask that all the time. I agree, but . . . Or they give their ID. There's no indication that he would have ultimately refused to give his ID under his version of the facts. I'm out of time. You're on . . . No, go ahead. No, I want you to have a chance to respond. We've talked a lot, so you talk. I want you to have a chance. Again, it is . . . it's blurry because he was investigating what he thought reasonably could have been a crime. The reason his investigation wasn't furthered is because plaintiff, who probably didn't want to give his ID because he was wanted, didn't allow him to. He didn't allow him to get his . . . to conduct his investigation. But there's . . . again, he had . . . he had to do something, right? I mean, it . . . and that's . . . he couldn't do nothing in a situation where he's got . . . It's uncontested that these children were under distress. They were very upset, and that he had complaints about the plaintiff upsetting these children. He's at a private school fair. His only job is to keep the peace. He had to do something. And his efforts to try and investigate were stymied by the plaintiff's refusal, probably because he knew he had active warrants, to engage with Sergeant Reddick. Thank you. We appreciate it. You've saved time for rebuttal. May it please the Court. This is a court of review, not first view. The Court states that proposition a lot, whenever an appellant asks this Court to decide facts in the first instance, or whenever an appellant asks this Court to make a legal conclusion in the first instance. And that's what's going on in this appeal. The appellants don't like the result, so they're appealing to this Court saying, give me a different result. And that's not how it works. That's not sufficient. Sufficiency of the evidence is not even before the Court. And I'll confess to being confused, frankly. The appellants argue, my colleagues argue, they made a Rule 50A motion at the close of plaintiff's case. They did, orally. And then they made a renewed motion at the close of all evidence under 50B. And that's how they briefed it. So that's how I briefed it. And I talked about the rules for 50A and 50B is just a renewed motion. But frankly, that second motion is not a Rule 50B motion. I should have put that in my brief and I didn't. It's another 50A motion. It's before it went to the jury. It's arguing, give me a 50A judgment as a matter of law before the jury decides. There is no Rule 50B motion because there's no motion after the verdict. So that's – I beg your pardon? You didn't brief that for us. I did not brief that, Your Honor. I don't know if we can consider that it's procedurally infirm. Well, it's supported by the record, and I think you can affirm on any basis supported by the record. Whether it's a 50B motion or not, whether it's properly before the Court or not, qualified immunity is not before the Court. That was never part of a Rule 50A or B motion. Can you talk about evil, reckless, or callous and punitive damages in this case? Certainly, Your Honor. On punitive damages, and a lot that my colleague represented as being facts or being undisputed, were very much disputed at trial, terrorizing children and all these children complaining. We dispute that that happened at all. Mr. Reddick told Mr. Holmes after he's arrested, after all this happens, after he's handcuffed, well, you were photographing children. That's why I arrested you, and we're going to put you in jail, and we're going to let everybody know why you're in jail. Is it against the law in Louisiana to photograph children in a public setting? I understand it may be creepy, but I don't know if it's against the law. It's not against the law at all. We had the testimony from the school principal. This is a church and a school, and the fair, I think, is under the auspices of the church and the school. And she said, well, it's not illegal to photograph people at the fair. It certainly doesn't violate Louisiana law. Photographing anybody in public is lawful, generally speaking. There's video voyeurism statutes in other states that have been held unconstitutional, but we're not even—I hate to even give that any credence. He's taking photographs, and what we know from the record is he took photographs that the jury saw. The jury saw every single photograph between 512 and 514 p.m. for two minutes. That's one of the reasons the jury—that's one of the bases the jury could say, I don't believe Officer Reddick, because Officer Reddick said, I got these groups of children to say there's this creepy guy taking photographs, and then 45 minutes there's this other group, and then an hour later there's this third group, and then there's this fourth group. Well, that wasn't Holmes, and that's not an issue of, well, yes, we concede it's true, but he didn't know it wasn't Holmes later. This is something he's making up, Reddick, out of whole cloth. He made it up in his deposition two years later. He got cross-examined on all that. The jury heard— Is that why you think support is for evil, reckless, or callous? It's reckless because he's arresting a man for a crime that's not a crime. You were taking pictures of children, he says. That's not a crime. He knows it's not a crime. All reasonable officers who are deemed under the jury instruction, this Court's pattern instruction, they're supposed to know the—they're deemed to know the clearly established law. If, as a matter of fact, they don't know it, well, that's their problem, not their victim's problem, like Mr. Holmes in this case. He's saying, you were taking pictures of children, that's why we're going to throw you in jail, and we're going to tell everybody else in jail why you're in jail, because you're a creepy pervert, and let's hope that something awful happens to you in jail, as happens in jails all the time. Did he say all that, or just that's stuff you're adding right now? That's the reasonable inference that I'm adding. The record—the testimony from Mr. Reddick, according to Holmes, is you were taking pictures of children, we're going to throw you in jail, and make sure all the other prisoners know why you're in. So that's not to give him a birthday cake. It's to make his life absolutely, horrifically miserable. So that shows—that's evidence of malice. We don't need direct evidence of, yes, I acted maliciously, close quote. We don't get that in any case. The jury can conclude this man violated clearly established law, that Mr. Holmes was freed from an unlawful arrest, did it for untoward, illegal reasons, and then gloated over it, gloated over the fact that it wasn't going to end there, it was going to get much, much worse for Mr. Holmes, and Deputy Reddick was going to make sure of that. Is there a heightened standard of proof for punitive damages or exemplary damages? There is not a heightened standard of proof, Your Honor. So what do we have to have here for a sufficiency of evidence? Is it a scintilla? It's something more than a scintilla. The law talks about a scintilla alone is not enough. More than a scintilla, but less than a preponderance? It has to be substantial? It has to be substantial evidence. There's a cornucopia of evidence, if we're going to keep with the Latin. It's not a scintilla. There's a cornucopia. There's an abundance of evidence. Forget Mr. Holmes and his witnesses. That came out of Mr. Reddick's mouth, and his testimony was all over the place. The court noticed that. Well, he testified contradictorily in a lot of different ways. One of the things that Mr. Reddick said was, well, no, I didn't have reasonable suspicion. I was walking up to Mr. Holmes just to see what's going on. We're going to have a consensual encounter. And I say, well, sir, may I ask you a question? And that's when Holmes explodes with vulgarity. F you, cop, I'm a lawyer. That's not the way it works. So then I, Reddick, am so taken aback. That gives me probable cause. But he was everywhere on his testimony, Officer Reddick. He conceded he didn't have probable cause. What was the probable cause for the resisting an officer charge? Well, I don't know. Well, who did he resist? Well, he resisted me. Well, if he doesn't know the probable cause, why should the jury find that for him? They didn't. They heard all the testimony. They heard all the different stories Mr. Reddick gave. And they found as they did. They found qualified immunity for the Terry stop and not for the false arrest. That was perfectly consistent. Further to Judge Wilson's question on punitive damages, it's an abuse of discretion standard. So did the jury abuse its discretion in awarding the punitive damages? It did under the facts and the evidence that they heard. And likewise. Did the court commit some of the damages or something? The court itself did not. When the jury came back, the court examined the verdict and said it's inconsistent. You gave qualified immunity for the Terry stop. And yet one of the reasons for your $150,000 punitive damage award was the unlawful Terry stop in addition to the false arrest. So they went back and they gave a lower amount. Yes, Your Honor. The court said go back and correct this. And I'm not saying you need to change the amount, but if you think you should. They chose to change the amount. They chose to change the amount. We have some issues with the verdict, but we're living with the verdict. The verdict was substantially what Mr. Holmes got somebody, a jury, to agree. That what was done to him was wrong and was unlawful. And as the court knows, that's a very, very tough standard to overcome. And the appellants certainly haven't overcome it at all. They haven't gotten to qualified immunity. They never asked the court to determine qualified immunity. There was never a motion for judgment as a matter of law leaving aside the 50B, 50A, even before the court at all. The two motions don't address qualified immunity. The oral motions for under 50A, if one's 50A or they're both 50A or one's 50B, they don't get into qualified immunity. The only even reference to something that's qualified immunity-like is a reference to clearly established law on a malicious prosecution claim under federal law that the court granted judgment as a matter of law. That's not before the court. The Terry stop isn't before the court for the same reasons Judge Wilson pointed out and Judge Elrod did. There was qualified immunity that the jury found for the Terry stop. So it's all about the false arrest under federal law. And the jury had ample evidence to find that this was a false arrest. It wasn't supported by probable cause. There was a false arrest claim under state law. The state law claims aren't even appealed. It's the same probable cause inquiry. By not appealing it, defendants concede there's probable cause for that or no probable cause for that. There was no probable cause for the state law malicious prosecution claim. It's the same inquiry. I don't know why that's not appealed if this appeal has any kind of force, which I think the appeal is all about. The jury got it wrong, and we don't like it. Well, when I lose, I don't like it either. But not liking it is not enough. It's not legally enough. It's not legally sufficient. The evidence is overwhelming. I'm not going to rehash everything in the brief. A lot of the facts that my colleague talked about is being undisputed. We pointed out are, in fact, disputed and were disputed at trial and not supported by the record at all. He's photographing these children. He's doing all these other things. This was a very innocent encounter at a fair that this man's been to for years as someone growing up in Plaquemines Parish. Everybody goes there. Every material part of the case was disputed and resolved by the jury. And the jury got it right in every main element. There's really nothing the jury got wrong that the defendants are complaining about, and the court didn't get anything wrong. The district court on this supposedly inconsistent verdict, well, the argument now on the verdict's inconsistent and give us a new trial and everything else is the same argument below. There's no engagement by the appellants in the district court committed in error. And this court cites the Brinkman case all the time, Brinkman versus Dallas County Deputy Abner, I think. If you don't even brief and claim an error, well, it's like you didn't appeal it at all. So you can cut and paste and rehash your same argument as below, and the jury should have done what I said they should have done instead of what they actually did based on the evidence. But if that's all you have, that's not an error. That's not a reason for the court to say the district court abused its discretion in not giving you relief. And the standard when a court denies a motion and upholds a jury verdict, a motion for new trial, is exceedingly broad discretion. That's about as broad as it gets to maintain the jury verdict. That's what we have here. We have a jury verdict supported by a whole bunch of evidence, supported by the defendant himself, Reddick, with all of his testimony, contradictory testimony. And that's what we're going to live with. And there's no legal reason to say we're going to ignore the jury verdict or the district court did something wrong in not giving us relief. There's nothing like that in the record at all. So. I don't want to make up your argument unless there's something further. No, I feel like I'm just repeating myself, Your Honor. Thank you. Thank you. Mr. Mullally, you've saved time for rebuttal. Thank you, Your Honor. Addressing the punitive, because I didn't address it initially, we would submit, again, that this blurry line in what happened here between the detention and the subsequent arrest we submit entitles us to the relief. But in any event, this is not a punitive damage case, and the jury did abuse its discretion in granting punitive relief. There was no . . . Did you infer that the defendant, or the person, not the defendant, the plaintiff in this case, was going to go to jail, and everybody would think that he was interested in children in some sort of untoward way? Did your client . . . No, certainly not. Is there evidence from which the jury could infer and believe in this record? That may have been plaintiff's testimony. Yes, and the jury could believe that. And I understand, Your Honor. I just don't know if that's exactly what his testimony was at trial. I know it didn't come from my client or anyone . . . Right, but they could believe the plaintiff. Understood, Your Honor. Is your client still a deputy? Yes, Your Honor. But it's important to note from the record also that my client's interaction with Holmes terminated shortly after the initial encounter. Mr. Holmes, his ID was subsequently obtained from other officers, whereby they ran his name, and he came up having active warrants. He was going . . . he went to jail as much for the warrants as he was for his failure to identify himself in connection with the lawful investigation that Reddick was trying to pursue. So, I do think that the jury did not have sufficient evidentiary basis to arrest . . . I mean, to award punitive damages vis-à-vis the claims against Reddick. Whether or not he may have told plaintiff that, again, it's disputed. But, he . . . the plaintiff was arrested, notwithstanding the fact for resisting arrest, which again, incidentally, I wrote down. It is a crime in Louisiana, a failure to not identify yourself, if the initial detention is lawful. So, if I have reason to detain you and you refuse to identify yourself and make yourself known, that is a crime. That is the resisting arrest charge. He wasn't arrested for fighting with Deputy Reddick or using force upon . . . He was arrested under Louisiana Revised Statute 14-108 for failure to identify himself during the course of a lawful detention. That is the crime. That's what was instructed to the jury by the court. And . . . The jury chose not to believe that he refused or chose not to believe that it was a lawful detention. And, that was their prerogative. Correct, Your Honor. But, going back to the punitive damage award, there's just not a sufficient evidentiary basis and record to show evil intent or motive. Whatever . . . Can the jury award punitive damages if they think you're lying a lot at trial about the incident and implying that there are all these crying kids and things that the evidence doesn't show at all, with the terms of the physical photographic evidence? Could that be a basis for punitive damages? Well, Your Honor, thankfully, that's not this case. The child testified at trial. She testified that she approached Reddick and was upset and showed a photograph that her aunt had taken of the plaintiff as being the person who was causing them distress. So, the principal testified, the aunt testified, the mom testified, and the child testified. So, he wasn't approaching plaintiff . . . Yeah, but Holmes testified, too, and he said, Yeah, the officer then told me I'm going to put you in prison and we'll make sure everybody knows why you're in there. And he wasn't implying because you resisted arrest. Well, he wasn't . . . Again, Your Honor, he wasn't arrested for photographing children. But that's just it. The officer's statement that Holmes recounted was that we're going to put you in prison and the almost unmistakable inference that I take from it, surely the jury could, was that we're going to put you in there, we're going to let everybody know that you're a child predator or you're taking pictures of kids. In other words, I mean, that's what Holmes said your client said to him as justifying the arrest or what he was going to do to him or whatever. I mean, the jury can look at all that. I'm out of time, Your Honor, unless there's anything else. Okay. You can answer the question or not. Again, our position is Mr. Holmes was being investigated based on the concerns related to Reddick. He was arrested for noncompliance with the investigation pursuant to Terry and for having active warrants for his arrest, Your Honor. Thank you. Thank you. This case is submitted. We appreciate the arguments of Mr. Mullally and Mr. Laughlin. Court will stand in recess until 9 a.m. tomorrow.